Next case is 115769, People of the State of Illinois v. Derrick A. Cummings. Agenda number six. The parties are going to proceed. You may proceed. Good morning, Your Honors, and may it please the Court. My name is Eldad Malamud. I'm here from the Illinois Attorney General's Office on behalf of the appellant, the People of the State of Illinois. The People asked this Court to reverse the appellate court's judgment, which affirmed the trial court's order suppressing evidence. The issue in this case is whether Officer Shane Bland violated defendants' Fourth Amendment rights by unreasonably prolonging a traffic stop. It is useful to set forth at the outset what's not at issue in this case. It is undisputed that Officer Bland was justified in stopping the van. There was an outstanding arrest warrant for the registered owner of the vehicle, a woman named Perlene Chaddock. And Officer Bland, though he tried, could not determine the identity of the driver while the vehicles were moving. Once the traffic stop began and was initiated, Officer Bland asked for defendants' driver's license. It is undisputed that this was not a separate Fourth Amendment search, as defendant had no legitimate privacy interest in the information of whether he had a valid license. It is also undisputed that before defendant stated that he had no license, the stop was exceedingly brief. Officer Bland immediately asked for the license, and defendant responded that he didn't have one. So just a quick sum. It is undisputed that the stop was justified at its inception, involved no separate Fourth Amendment search, and was very brief. May I maybe take you back a step? Why do you say that there was no privacy interest in his the status of his license and the registration of the car? In other words, in terms of the conversation that was had between the officer and the defendant here, why was there no privacy interest? Well, Your Honor, it is well established that there is no privacy interest in public information. It is information that is public, whether you – whether a driver is badly driving, whether there's a bad license. I assume that you're talking about, for example, Harris, where there's a – the issue was a warrant check. Isn't there some distinction between the police officer going to a computer and looking at a computer and trying to find out what information there is, and the officer engaging in this conversation and demanding documents from the defendant? Well, first of all, Your Honor, the cases like Harris, like Hibble, establish that there's simply no Fourth Amendment interest in a request for identification, a request for your name. Secondly, I do not think there's a distinction between the request in Harris and the request here. In both cases, there was a – the initial seizure was lawful at its inception. That's the relevant inquiry. Once that occurs, the only question with respect to whether it's a separate Fourth Amendment seizure is whether there's a – some sort of separate legitimate Fourth Amendment privacy interest, and there simply isn't any. So what we're left with in this case is the question of is there a bright-line rule that once Officer Gland realized that the defendant was not the subject of the arrest warrant, anything besides immediately telling the defendant that he was free to go was per se unreasonable. In other words, the defendant asks this Court to adopt a new bright-line rule that for any traffic stop, once the purpose of the stop is effectuated, any comments, further comments, question, or action, aside from telling the defendant that he's free to go, is a Fourth Amendment violation. This Court should decline to adopt this newly-minted bright-line rule. We know from cases like Cabales and Harris, Sharp, that there can be these brief moments that might not be 100 percent necessary to effectuate the purpose of the stop without creating a Fourth Amendment violation. For instance, in Cabales, the officer had pulled the driver over for speeding and decided to give the driver a written warning. But in the meantime, the officer engaged in several actions that were not absolutely necessary to give him a speeding ticket. He asked the defendant if he could search the car. He asked the defendant if he'd ever been arrested. In fact, he had a completely – a call on his police radio with another officer on a completely unrelated matter. So – and yet, nevertheless, the Illinois courts first held that the duration was reasonable, was justified, and the United States Supreme Court had no trouble accepting that justification. So these centerpiece cases that a defendant relies on for this bright-line rule simply do not uphold that. Harris is another good example. In that case, there was the request for a license of the passenger and a warrant check on the State ID that was provided. At that point, that did not effectuate the purpose of the stop, which had been to provide a citation originally for an illegal left-hand turn. Nevertheless, this Court upheld the officer's action. Robinette is another good example. In that case, the officer had pulled the driver over for speeding, had done the background check, and then decided to give the driver a verbal reprimand, returned his license with a verbal reprimand, and only then decided to ask if the driver had anything illegal in the car and if he could perform a seizure. The Supreme Court was faced with the issue of whether the officer had to inform the driver that he was free to go before pursuing the consent. The Supreme Court rejected that argument and found that it didn't – there was no magic bright-line rule here that once the purpose was effectuated, the verbal reprimand given, there was some sort of immediate need to inform the driver that he was free to go. It also simply wouldn't make sense, that kind of rule. We can consider a counterfactual example here. Imagine if instead of immediately getting out of the car, asking for the license, Officer Bland had stayed in his car, had a conversation over his police radio about an unrelated matter, checked his voice messages, checked his e-mail, and then approached the car, but didn't ask for a license, instead said that – looked, saw that the driver was a man and not Praline Chaddock and said that they would be free to go. That would pass the test under defendant's view because there would still have been something left to do. The purpose had not been effectuated. But of course, that would be a much more intrusive seizure, a much longer seizure. And we don't want to give any kind of perverse incentive to officers to put off finding the critical information. So we know from all these cases that there's no bright-line rule which would require every single moment to be absolutely necessary to effectuate the purpose of a stop. I'll simply briefly state separately that even under just a traditional totality of the circumstances test, this stop here would be reasonable because in any analysis you weigh the intrusion on the Fourth Amendment, the privacy interests of the individual against the important governmental interests. And here we've already established, I hope, that there's no privacy interest in the license. The stop was very brief. And on the other hand, we have the important governmental interest of both officer safety, as we've discussed in the briefs, and of checking the license. But counsel, what was the purpose of the justification then for retaining him? Well, originally the stop was justified. After that's passed, what would be the purpose for this keeping him? Well, Your Honor, as the, again, the justification, when the interests at issue, once the, even though Officer Bland had realized that the defendant could not be prudentiatic, there were still vital governmental interests, like officer safety. So the officer might not have known what, who he was pulling over, what the stop was going to look like. And the, this Court and the United States Supreme Court have made clear that in every traffic stop, there's, the safety is enhanced if the officers exercise unquestioned control over the situation. So the issue of government, of the officer safety and of passenger safety was still there. Additionally, we have the check of the compliance with license requests. Excuse me, with license requirements. Now, we know that the, that can't be the basis for stopping a vehicle under Prowse, but it's still the case that that is a vital interest, which once the stop is justified, may be, may be pursued. And plus, once again, we know that the issue here, that again, even if there was no justification, because there's no bright line rule requiring that for such a de minimis time for the stop, that the, the stop under Cabalas, under Harris would be permissible. It would not have been a point. But then you're saying that the police can continue to detain someone even if they have no reasonable suspicion of wrongdoing. Well, Your Honor, obviously the, the, what is a reasonable period of the detainment would, that would certainly play factor in. And again, but the governmental interests here, in this case, were still present. The officer wasn't going to simply drive away without speaking. He had to engage the driver at some point. So we have, again, automatically the important governmental interest of officer safety. You just said the officer had to approach the car. And once he approached the car, then the concerns about officer safety arose. Well, why did the officer have to, if the issue is we're concerned about the safety of the police officer, why did he have to approach the car in the first place? Your Honor, I would submit that if any of us were pulled over, if a traffic stop were initiated, the officer, we viewed the officer getting out of the car, starting to approach, immediately turning around, getting back in the car and driving away, that that would, that would not be a desired outcome. The driver might not even know that he or she is free to go at that point, might be confused as to what happened. I guess I'm back at my concern. You, you, you set up the, the proposition being a totality of the circumstances analysis. What is the privacy interest in which you, interest which you say is reduced because it's public information about whether you're licensed or not. And we're going to balance that against, and you've said two things, officer safety and traffic safety. But in terms of the officer safety, then what is the governmental interest of having the police officer, not the, not from the point of view of the driver, what is the important governmental interest of the police officer approaching the car? Well, again, Your Honor, as long as the, as we can establish that the officer is going to make some sort of communication to the driver, the officer is not going to drive away, then the issue is, is present. So again, it's certainly conceivable that the officer could have driven away, but that is not the only, at that point, reasonable decision for the officer to make. It's eminently reasonable for the officer to approach the vehicle and explain the reason for the stop. That's indeed defendant to you as well. And once that's the case, the issue of government of officer safety is present. So the defendant would not have been at liberty to decline the officer's request for identification under your analysis? That's correct, Your Honor. We're not asserting here that there was, that the request was for a voluntary, that the defendant could have refused. Unless the court has any further questions, the people ask the courts to reverse the judgment of the appellate court. Thank you. Good morning, Your Honors. Counsel, may it please the Court. My name is Sean Conley. I'm from the Office of the State Appellate Defender, and I represent Appellee Derek Cummings. This is a very simple case with a very simple, very narrow fact pattern. There's an arrest warrant for the registered owner of the van that Mr. Cummings is driving. The initial justification of the stop is simply to answer the question of whether that driver, Mr. Cummings, is the owner of the van, the person for whom the warrant applies. The owner was female, and Mr. Cummings is, of course, male. It's physically impossible for Mr. Cummings to be the subject of the warrant. And the officer in this case testified that he became aware of that fact immediately. At that point, all of the officer's questions that were raised by the initial justification for the stop have been answered. The seizure should have ended. It did not. And thus, to continue the seizure, to further investigate the driver's credentials, violated the Fourth Amendment. When should it have ended? It should have ended as soon as the officer was aware that the driver was not, for lack of a better word, the warranty. So tell me at what point in time in this fact pattern would it have been, as I understand the facts, he couldn't tell exactly who the driver was and then he stopped? Correct. He couldn't tell initially. So it was okay to stop? So it's okay to stop. Okay. There's no dispute that it's okay to initiate the seizure. The problem here is that the seizure continued after the questions that were raised by that initial justification for the seizure had been answered. So tell me exactly at what point in time that would have been. In other words, was it all right for the officer to approach? It was absolutely okay for the officer to approach. That is entirely reasonable under the circumstances. Was it reasonable to say something? It's absolutely reasonable to say something. Okay. The officer can approach, explain what's happened, and through some either implied or explicit statement communicate to the individual, in this case Mr. Cummings, that they are free to go. And this is, I think, critical. The officer can then continue the interaction in the context of a consensual encounter. We're not saying that the officer can't ask about the driver's license. We're not saying that the officer can't talk to Mr. Cummings. But it has to be in the context of a consensual encounter because the purpose of the seizure has been met in this situation. Excuse me. Does that mean that he would have had to tell the defendant, Mr. Cummings, that he was free to leave now before he continued a conversation? We have case law that says that the officer doesn't have to use those expressed words. Then how would Mr. Cummings know that? I'm not particularly comfortable writing a script for the police officer. But the police officer has to create an environment in which the defendant or the person who has been seized, were they a reasonable person innocent of all wrongdoing, feel like they could refuse to answer further questions. And you think a reasonable person would leave under the circumstance without being told? I would hope so. Though I say that because, again, we have case law that says that you don't have to use those explicit words. I think that the best practice in this situation would be to use those specific words. But I'm not going to deny that there are certainly cases from the U.S. Supreme Court saying that we don't have to say those exact words. What about the sobriety checkpoint type cases? I think one was cited by counsel where there's no reasonable suspicion to stop in the first place and they've allowed checking a license in that instance. Absolutely. I think that this is a different circumstance than that circumstance. All of our cases, going all the way back to Terry, have said that the duration of a seizure, the reasonable duration of a seizure, is analyzed with reference to the initial justification of the stop. The language is occasionally beyond the time reasonably required to complete the sole purpose justifying the stop or the time reasonably required to answer the normal inquiries incident to the stop. The normal inquiries incident to a DUI checkpoint are very different than the very, very narrow facts that we have in front of us today. Today all we have is a warrant for whom that cannot possibly apply to Mr. Cummings. And so the questions that are raised in that situation, as opposed to a DUI checkpoint or any other sort of checkpoint or any other sort of traffic seizure for that matter, are different than those that apply in this case. The State also argues that the driver had no privacy interests in information about his driver's license or the registration of his car. Could you respond to that? Certainly. Respectfully, I believe that the State and the defense on that point are speaking past each other. The problem is not the privacy interest in the information. The problem is that Mr. Cummings was seized, and so that seizure was unreasonably based on the purposes for which that seizure was initiated. This was a situation, again, a very, very narrow fact pattern. The warrant cannot apply to Mr. Cummings. The officer can clearly continue to speak to Mr. Cummings, but it has to be in the context of a consensual encounter. Now, the privacy interests of what that conversation may entail, I believe that we have an interest in not answering questions when confronted with these consensual encounters. And so I do not believe it's relevant that the status of the license is public knowledge. So time isn't an element here. Time is an element within the totality of the circumstances. But the totality of the circumstances in this case were that, again, there is a warrant. Mr. Cummings cannot possibly be the subject of that warrant. The amount of time necessary to answer the questions incident to the purpose of this stop were exceedingly short. Now, I'm not going to deny, obviously, that this was a very brief encounter. But additionally, we can't minimize what happened here. A seizure is a seizure. It's always inconvenient. It's always stressful. And it has to be analyzed within the rubric of the Fourth Amendment. So going forward, I mean, we're going to write precedent here. Certainly. And hopefully police officers will read it. What's the rule we should write down? I mean, how are we going to tell them what they have to do? I would say that this is a simple application of existing law. In this particular case, very, very narrow case, once the purpose of the stop has been completed, end the seizure and continue consensually. That's what the Third District urged the police officer to do in this case. That's what the trial court urged the police officer to do in this case. And, again, if that had happened, we wouldn't be here. It's entirely reasonable to continue consensually. Is that what Cabayas says, though? The, quote, Duration of the stop was entirely justified by the traffic offense and the ordinary inquiries incident to such stop. You have no problem with the stop, right? I have no problem with the stop. Only with the seizure. The stop is justified. The stop is justified. And the ordinary inquiries incident to such stop that was justified would be, let me see your license, wouldn't it? I would disagree with that. The ordinary inquiries incident to this particular stop, which is not a traffic stop, it is the execution of an arrest warrant. And the execution of an arrest warrant that cannot possibly apply to the person who's been seized. The questions raised by that warrant are, is this the person the warrant applies to? In this particular situation, it's physically impossible for the person being seized to be the person the warrant applies to. But there's nothing in that statement that says a justified stop being later one that you were mistaken on, that you're not allowed to, at least in the statement itself. I know what your argument is. Certainly. But there's nothing in the statement other than the ordinary inquiries incident to such stop. And the stop, an inquiry probably that's incident to any stop, is let me see who you are, right? I mean, you wouldn't. In this very narrow set of facts, I would disagree with you. I would respectfully disagree. I believe in this particular situation, the ordinary inquiries, does this warrant apply to this driver? That question was answered. Having been answered, it's important for the police officer to end the seizure and continue consensually. So is our message to the police officers that in every other traffic stop, it's okay to ask for driver's license and proof of insurance, but only if you have a warrant that names a wrong individual? You cannot? I'm not certain I would agree with that statement in all possible situations. And this goes back, I think, to the State's framing of the argument, claiming that the defense is asking for a bright-line rule. We're not asking for any sort of bright-line rule. We're simply applying the principles that have already been established through our Fourth Amendment jurisprudence to this, again, very narrow fact pattern. If there are other fact patterns in which it would be appropriate to reach the same results, I would be happy to defend those as well. Those are not what happened here. So you're saying that the officer could have engaged in a different kind of conversation? Absolutely. The officer could have said, do you know Perlis, whatever her name is, and is this her car, or something like that? So the only encounter the police could have had was limited to the original stop, that being the warrant of execution. Is that what you're saying? That's the seizure would be limited to that initial justification. The seizure, of course, being the expression of government, you know, the government's power over the body of the person. The difference between that and the consensual encounter would be that Mr. Cummings could say, I'm late. I'm on my way somewhere. I need to go, officer. I'd rather not answer these questions. And we allow people to do that in consensual encounters. In this particular encounter, Mr. Cummings was not at liberty to do that. He should have been, but was not. That's where the violation is. And your position changes in the scenario in which Bland would have said, I really couldn't tell if it was a man or a woman. Absolutely. You know, he or she was wearing a hat or whatever. Absolutely. Absolutely. In the case that the dissent in the third district cited, Sifuonwan, I apologize for my pronunciation of the case, but that is that case. In that situation, the defendant and, again, I'll say warrantee, looked alike. They had the same hairstyle, the same style of mustache. The defendant was first seen in the warrantee's home. He was followed from the home and pulled over. And it wasn't until the parties were in court looking at a picture next to the defendant that they were able to say, well, no, this is not the same person. And furthermore, in that situation, when the defendant said, oh, I'm not the person you're looking for, he was not in that situation able to verify that information right away. The ordinary incidents, the ordinary inquiries of that stop were not answered until the officers brought the information that the defendant gave them back to their squad car, called it in, and got the information that they needed. That whole process in this case was complete as Officer Bland approached the car or the van. Thank you. So thank you. I would ask that this Honorable Court affirm the third district's decision in this case. Thank you again, Your Honors. Quickly on rebuttal. The people believe, like the defendant, that at heart this is a simple case. The United Supreme Court and this Court have made clear that the reasonableness of the law in this case is not a simple case. The reasonableness of the law in this case is not a simple case. The reasonableness of the law in this case is that the length of a stop is the constitutional loads there. That's what Cabalis, Harris, Sharp, that's what those cases all say. And that if there's some time that occurs, even if there hadn't been, even if there was no additional governmental purpose, that's okay. That does not make this unnecessarily unduly prolonged. Defendant here says let's create an exception. As Justice Thomas pointed out, we allow the license request at sobriety checkpoints. Even defendant would concede that it's an acceptable question before he learns of the dispositive fact. So defendant says let's make this one exception to the rule. But once again, he doesn't say which Supreme Court case would support this exception. And as we've seen, all the cases, Cabalis, Harris, Sharp, on which he relies, do not state this exception. And once again, it would also create this perverse incentive. It simply would not make sense. So it's not, this exception is not grounded in a Supreme Court precedent, precedent of this Court, and it wouldn't make sense. Unless this Court has any further questions, we ask this Court to reverse the judgment of the appellate court.  Thank you. Bill 15769, People of the State of Illinois v. Derek A. Cummings is taken under advisement as agenda number six. Mr. Melvin, Mr. Connelly, we thank you for your arguments. To those spectators in the courtroom, we hope you found this to be beneficial and a learning experience. Mr. Marshall, the Supreme Court stands adjourned until tomorrow morning, November 20th at 9.30 AM.